UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

---

UNITED STATES OF AMERICA,
       *Plaintiff,*

                Case No.:  8:94-cr-220-SCB-MAP-5

BRUCE WAYNE HARISON,
       *Defendant.*

---

### NOTICE OF MOTION FOR COMPASSIONATE RELEASE

  PLEASE TAKE NOTICE, that upon the annexed memorandum of law, the undersigned move this Court pursuant to Title 18 USC §3582(c)(1)(A) for defendant Bruce Wayne Harrison's immediate release from the United States Bureau of Prisons Custody at FCI Coleman Low together with such other and further relief as to this Court may seem just and proper.

DATED:  Buffalo, New York
      February 1, 2021

Respectfully Submitted,
Attorneys for Defendant, Bruce Wayne Harrison,

| | |
|---|---|
| LIPSITZ GREEN SCIME CAMBRIA LLP | BENJAMIN, AARONSON, EDINGER & PATANZO, P.A. |
| Alexander E Basinski, Esq. (*Pro Hac Vice*) | James Benjamin, Esq. |
| 42 Delaware Avenue, Suite 120 | 1700 E. Las Olas Boulevard, Suite 202 |
| Buffalo, New York 14202 | Fort Lauderdale, Florida 33301 |
| (716) 849-1333 | (954) 779-1700 |
| abasinski@lglaw.com | sexlaw@bellsouth.net |

TO:  JOSEPH K. RUDDY, ESQ.
    ASSISTANT UNITED STATES ATTORNEY
    400 N. Tampa St., Suite 3200
    Tampa, FL 33602

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

---

UNITED STATES OF AMERICA,
                *Plaintiff,*

Case No.:  8:94-cr-220-SCB-MAP-5

BRUCE WAYNE HARRISON,
                *Defendant.*

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE

ALEXANDER E. BASINSKI, ESQ., being an attorney admitted to practice law *Pro Hac Vice* in this District, and subject to the penalties of perjury, does hereby declare the following to be true and correct:

1. I, along with Erin McCampbell Paris, Esq. and James Benjamin, Esq. represent the defendant, BRUCE WAYNE HARRISON ("Mr. Harrison" or "Defendant").

2. I hereby file this Memorandum of Law in support of Mr. Harrison's Motion for Compassionate Release ("Motion").

### BACKGROUND

3. On September 28, 1994, Mr. Harrison was arrested and arraigned on thirteen counts of a fifty-one count Indictment and pleaded not guilty. (*See* Dkt. Nos. 3, 16, 39.)  He was remanded to custody pending trial.  (*See* Dkt. No. 55.)

4. On February 24, 1995, a Superseding Indictment was filed charging Mr. Harrison in fifteen counts.  (*See* Dkt. No. 289.)  Mr. Harrison pled not guilty to the Superseding Indictment on March 3, 1995.  (*See* Dkt. No. 297.)

5. On March 31, 1995, a Second Superseding Indictment was filed charging Mr. Harrison in fourteen counts including RICO Conspiracy. (*See* Dkt. No. 463.) Mr. Harrison pled not guilty on April 13, 1995. (*See* Dkt. No. 543.)

6. On April 17, 1995, a jury trial commenced with respect to Mr. Harrison and co-defendants Fred Joseph Brunet, Vernon Foster, Theodore Kefalas, Steven Lank, Edgar Curtis Ruof, Charles Schwarz, Jeffrey Hal Sprinkle, Ronald Carl Westendorf, Robert Edward Wurtzburger, William Zuschin, Robert George Gunther, Louis Malin Musher, Steven Jerome Hilton, and Stephen Bennington Lemunyon. (*See* Dkt. No. 565.)

7. The jury trial concluded on August 11, 1995. (*See* Dkt. No. 991.) On August 30, 1995, the jury returned a verdict of guilty as to counts 3ss, 25ss, 29ss, 32ss-34ss, 35ss, 36ss, 40ss, 41ss, and 42ss; a mistrial was declared as to counts 1ss and 2ss. (*See* Jury Verdict, Dkt. No. 1038.) Counts 17ss and 18ss were dismissed on Defendant's motion. (*See* Minute Entry, Aug. 30, 1995.)

8. On December 19, 1995, Mr. Harrison was sentenced to two hundred ninety-two months on each of counts 3ss, 25ss, 29ss, 32ss, 33ss, 34ss, 35ss, 40ss, and 42ss to run concurrently; sixty months on count 36ss to run consecutive to each other count; and two hundred forty months on count 41ss to run consecutive to each other count for a total of 562 months imprisonment and sixty months supervised release. (*See* Dkt. No. 1296.)

9. The length of Mr. Harrison's sentence is due in large part to the "stacking" provisions of 18 U.S.C. 924(c). Indeed, the two *mandatory*, *consecutive* terms of imprisonment of sixty months and two hundred forty months are the result of § 924(c) convictions. At the time of Mr. Harrison's conviction and sentencing, this Court was required to impose a consecutive five-year term of imprisonment for the first § 924(c) offense, and a consecutive twenty-year term of imprisonment for each subsequent § 924(c) conviction.

10. On December 21, 2018, the First Step Act ("FSA") was signed into law. Among other things, the FSA addressed the "stacking" provision under § 924(c) by narrowing the threshold for prior convictions that count toward triggering higher mandatory minimums for multiple convictions under the same indictment.

11. Mr. Harrison, who has been incarcerated since his arrest on September 28, 1994, is presently incarcerated at FCI Coleman Low in Sumterville, Florida. His term of imprisonment is set to expire on October 12, 2036.

12. Under the FSA, Mr. Harrison's mandatory consecutive term of imprisonment would have been reduced from three hundred months to one hundred twenty months. Such a reduction would have placed Mr. Harrison's maximum expiration date closer to October 12, 2021.

13. In light of the global coronavirus pandemic and the changes to compassionate release under the FSA, Mr. Harrison filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) on April 13, 2020. (*See* Def.'s Mot. to Reduce Sentence, Dkt. No. 3051.)

14. On May 6, 2020, this Court denied Mr. Harrison's *pro se* motion on the grounds that Mr. Harrison failed to demonstrate that he exhausted his administrative rights to appeal a failure of the BOP to bring a motion on his behalf. (*See* Order, Dkt. No. 3055 at 4-5.)

15. Furthermore, this Court found that even if Mr. Harrison had exhausted his administrative rights, he nonetheless failed to demonstrate "extraordinary and compelling" reasons justifying compassionate release. (*See id*. at 6.)

16. In particular, the Court noted that:

> Harrison asserts three grounds which he contends demonstrate extraordinary and compelling reasons to grant his request for compassionate release: (1) his declining health due to early-onset Alzheimer's, Parkinson's disease and hypertension and/or his increased risk of severe illness if exposed to COVID-19 due to the same; (2) his

advanced age—68 years old---and the amount of time in his prison sentence that he has served thus far; and (3) his rehabilitative efforts while he has been incarcerated.

(*Id.*)

17.  Mr. Harrison is now sixty-nine years old and suffering from the usual health ailments that come with his advanced age.

## ARGUMENT

18.  Due to the FSA's modification of § 924(c)'s "stacking" provision, we respectfully ask that this Court issue an order reducing Mr. Harrison's sentence to time served under 18 U.S.C. § 3582(c)(1)(A); or, in the alternative, issue an order permitting Mr. Harrison to serve the remainder of his sentence in home confinement.

19.  Furthermore, Mr. Harrison has fully exhausted his administrative remedies and his Motion is properly before this Court.

### I.  Legal Standard for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)

20.  Generally, a district court judge may not modify a term of imprisonment except pursuant to 18 U.S.C. § 3582(c)(1)(A).  If the statute is satisfied, however, a district court judge may reduce a prison sentence to a sentence of time served and impose home detention or incarceration as a condition of supervised release.  The compassionate release framework under 18 U.S.C. § 3582(c)(1)(A), as amended by the previously passed FSA, provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in an case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal, a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in Section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction[.]

*Id.*

21.     This Court has recognized that in order to prevail on a request for compassionate release, Mr. Harrison must demonstrate that (1) submitted such a request to the BOP and either (a) the BOP denied the request, or (b) the warden of FCI Coleman Low took no action on the request within thirty days of receipt, and (2) extraordinary and compelling reasons warrant a reduction in his sentence.  (*See* Order, Dkt. No. 3055 at 4.)

22.     Therefore, as will be seen below, Mr. Harrison's application meets the requirements of § 3582(c)(1)(A) because Mr. Harrison's administrative remedies have been exhausted, and Mr. Harrison's unduly harsh sentence represent an extraordinary and compelling reason which warrant the reduction of the prison sentence, the factors set forth in 18 U.S.C. § 3553(a) support modification of the prison term, and a reduction in the prison sentence is consistent with the Sentencing Commission's policy statements.

      **a.**     **Mr. Harrison has satisfied the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A)**

23.     Mr. Harrison has diligently sought relief through the BOP's administrative process.

24.     On or about May 5th, 2020, Mr. Harrison submitted a request to FCI Coleman Low administration requesting a reduction in sentence based upon section 403 of the FSA.  *See* Reduction in Sentence Application dated May 5th, 2020, attached hereto as **Exhibit A**.

25.     On June 11th, 2020, Mr. Harrison filed a BP-8 Informal Resolution form to appeal the Warden's denial of his Reduction in Sentence Application.  *See* Informal Resolution Form, attached hereto as **Exhibit B**.

26.     On June 17th, 2020, Mr. Harrison submitted a BP-9 Request for Administrative Remedy, attached hereto as **Exhibit C**.

27. On June 23, 2020, Mr. Harrison submitted a BP-10 Regional Administrative Remedy Appeal to appeal the Warden's denial of his BP-9 Request for Administrative Remedy. *See* Regional Administrative Remedy Appeal, attached hereto as **Exhibit D**.

28. On August 15, 2020, Mr. Harrison filed a BP-11 Central Office Administrative Remedy Appeal to appeal the Warden's denial of his BP-10 Regional Administrative Remedy Appeal. *See* Central Office Administrative Remedy Appeal, attached hereto as **Exhibit E**. To date, Mr. Harrison has received no response.

29. Due to the "failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request," Mr. Harrison has satisfied the administrative exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).

30. Consequently, this Court has the authority to hear Mr. Harrison's Motion.

**II.   The First Step Act's Modified Sentencing Provisions Have been Determined by Courts in the 11th Circuit and Elsewhere to "Extraordinary and Compelling Reasons" Which Justify Compassionate Release.**

    **a.   The First Step Act's Modification of 18 U.S.C. § 924(c) "Stacking"**

31. A lack of clear guidance as to what constitutes "extraordinary and compelling" reasons has troubled many district courts hearing compassionate release motions during the coronavirus pandemic. Indeed, many courts have turned to Federal Sentencing Guideline § 1B1.13 for guidance. However, the application of § 1B1.13 to compassionate release motions brought by a defendant is fundamentally flawed.

32. In fact, the text of § 1B1.13 begins by stating "[u]pon motion of the Director of the Bureau of Prisons . . ." U.S.S.G. § 1B1.13. This is precisely the requirement that the FSA removed.

33. In *United States v. Brooker*, 2020 WL 5739712 (Sep. 25, 2020), the Second Circuit considered whether § 1B1.13, and specifically Application Note 1(D), remains applicable

7

following the changes made by the FSA. *See id*. at *6. Due to the language cited above, the Second Circuit found that "though motions by the BOP still remain under the First Step Act, they are no longer exclusive, and we read the Guideline as surviving, but now applying *only* to those motions that the BOP has made." *Id*. (emphasis added).

34. As a result, the BOP no longer retains the power to define "extraordinary and compelling" circumstances. *See id*. at *7. Ultimately, the Court held that "[f]or all of these reasons, the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id*.

35. Finding that the defendant's age, rehabilitation, and unjust sentence imposed under § 924(c), when considered in conjunction with the coronavirus pandemic, warranted proper consideration, the court vacated the district court's denial of the defendant's compassionate release motion and remanded the case to the district court. *See id*. at *9.

36. In light of this wide discretion afford to district courts in determining the merits of a defendant's compassionate release, the FSA's modification of § 924(c) "stacking" warrants consideration. Indeed, many courts have granted compassionate release based, in part, on unjust sentences resulting from "stacking."

37. For example, in *United States v. Young*, 458 F. Supp. 3d 838 (M.D. Tenn. 2020), the court granted the defendant's motion for compassionate release, finding extraordinary and compelling reasons based upon the defendant's § 924(c) sentence, age, and rehabilitation. In 2000, the defendant was sentenced to 1,107 months based upon five simultaneous convictions under § 924(c). *See id*. at 840. Under the FSA, the defendant would be subject to a mandatory sentence of twenty-five years, rather than eighty-five, on those convictions. *See id*. Despite the restrictions

imposed by Application Note 1(D), the court found that "the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reasons for a sentence reduction . . . at least when considered in conjunction with [defendant's age and rehabilitation]." *Id*. at 848.

38.     Similarly, in *United States v. Clausen*, 2020 WL 4260795 (E.D. Pa. July 24, 2020), the defendant was sentenced to approximately two hundred thirteen years in prison based largely upon nine simultaneous convictions under § 924(c). *See id*. at *1. The court held that "nothing prevents the Court from concluding that a combination of factors, including rehabilitation, can together establish extraordinary and compelling reasons." *Id*. at *7.

39.     Furthermore, the court dismissed the government's argument that granting compassionate release based upon § 924(c) stacking amounted to a retroactive application of the FSA, stating that "it is not unreasonable for Congress to conclude that not *all* defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve *some* defendants of those sentences on a case-by-case basis through compassionate release." *Id*. (quotations omitted). Based upon the defendant's "off the charts" sentence and his personal growth and rehabilitation, the court found that extraordinary and compelling reasons warranting a sentence reduction. *See id*. at *8.

40.     In *United States v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020), the court found that extraordinary and compelling reasons based upon defendant's fifty-seven-year consecutive sentence under § 924(c). *See id*. at *7. The court noted that the lack of compassionate release cases which fit the medical or age-related criteria set forth by the BOP are, at least in part, what spurred Congress to pass the FSA. *See id*. at *6. Despite the absence of any notable medical or health conditions, the court held that defendant's young age at the time of the sentence,

incredible length of the mandatory sentence imposed, and passage of the FSA constituted extraordinary and compelling reasons warranting a reduction in sentence. *See id*. at *7.

41.    In *United States v. Hester*, 03-cr-00535-KOB-GMB (N.D. Ala. 2020), the defendant moved for compassionate release based upon the COVID-19 pandemic and the 384 month sentence imposed under § 924(c). *See* July 27, 2020 Order, attached hereto as **Exhibit F** at 1. The defendant was sentenced to a total of 390 months imprisonment and had served more than 200 months of that sentence when his motion for compassionate release was filed. *See id*. at 2. The court found that the defendant established extraordinary and compelling reasons justifying release, and that the § 3553(a) factors weighed in favor of release:

> Section 3553(a) requires courts to impose sentences that are "sufficient, but not greater than necessary" in light of a multitude of factors including, among other things, the history of the defendant, the types of sentence available, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Here, the factors support a reduction.
>
> [Defendant] has served roughly 17 years of prison time, all without disciplinary incident. *Most of [defendant]'s sentence has been comprised of his consecutive mandatory sentences for his two simultaneous § 924(c) convictions.* In 2018, Congress passed the First Step Act and changed the language of § 924(c) so that only a § 924(c) violation committed after a prior conviction for a § 924(c) offense had become final would trigger a mandatory 25-year minimum sentence.[] That change does not apply retroactively. But, the court cannot help but note that, if [defendant] were sentenced for his convictions today, he would face a *much* shorter sentence because the 25-year mandatory minimum that led to his 300-month consecutive sentence would not apply. This creates a sentencing disparity between defendants who have committed § 924(c) offenses, which flies in the face of the § 3553(a) factors. Further, the consideration of other § 3553(a) factors, like [defendant]'s history *and the types of sentences available*, weighs against [defendant]'s continued incarceration.
>
> After considering the § 3553(a) factors, the court finds that [defendant] has already served a custodial sentence that is sufficient for his crimes. Because [defendant] has also shown extraordinary and compelling reasons for a reduction in his sentence, the court finds that [defendant]'s custodial sentence should be reduced to time served under § 3582(c)(1) in this case.

*Id*. at 5-6 (emphasis added) (internal citations omitted).

42. In *United States v. Hewlett*, 2020 WL 7343951 (N.D. Ala. Dec. 14, 2020), the defendant was convicted of conspiracy to commit carjacking, carjacking, and two counts of using a firearm during a crime of violence in violation of § 924(c). *See id*. at *1. Due to the § 924(c) stacking provisions, the defendant was sentenced to 25 years imprisonment on top of his original 108-month sentence. *See id*. at *2. The defendant moved for compassionate release based upon his medical conditions (including asthma) and the FSA's elimination of § 924(c)'s stacking provisions. *See id*. at *4. The defendant acknowledged "that the First Step Act changes to sentencing for Section 924(c) offenses are not retroactive, but assert[ed] that the court can still consider the disparity when determining whether he is eligible for compassionate release." *Id*.

43. The court found that:

[Defendant] need not rely only on his health issues to show extraordinary and compelling circumstances warranting compassionate release; [Defendant]'s long sentence, comprised of stacked Section 924(c) sentences that would no longer be imposed after the passage of the First Step Act, bolsters his showing of extraordinary and compelling circumstances. While the Eleventh Circuit has not currently addressed the issue, the Fourth Circuit has held that long sentences for stacked Section 924(c) convictions can be treated as extraordinary and compelling reasons for a reduction in sentence, noting with approval that "multiple district courts have concluded that the severity of a Section 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." [collecting cases.] This court will likewise take into consideration [defendant]'s lengthy sentence and the disparity in sentences received by defendants after the passage of the First Step Act. [Defendant] has long since served the 108-month sentence imposed for his violent carjacking crimes; the lion's share of his sentence has instead been comprised of his stacked consecutive mandatory sentences for his two simultaneous Section 924(c) convictions . . . Here, the court finds that [defendant]'s individual circumstances rise to the level of extraordinary and compelling.

*Id*. at *6.

44.     In *United States v. Marks*, 455 F. Supp. 3d 17 (W.D.N.Y. 2020), the defendant was convicted on various charges involving drug and firearms offenses. *See id*. at 18. He was sentenced to a 40 year term of imprisonment, the minimum sentence permitted under § 924(c)'s stacking provisions. *See id*. The defendant moved for compassionate release based upon the changes to § 924(c) under the FSA and his rehabilitation while incarcerated. *See id*. at 19. The court held that it was not bound by the Sentencing Commission's policy statement(s) concerning release, and found extraordinary and compelling reasons for release based on the "*combination* of changes to the 'stacking' provisions of § 924(c), coupled with the defendant's rehabilitation." *Id*. at 25-26 (collecting cases).

45.     Although the defendant in *Marks* engaged in "serious criminal activities" in the past, the court found that his record of rehabilitation sufficiently ensured that he would *not* pose a danger to the community if released. *Id*. at 28, 32. Notably, the defendant engaged in rehabilitative efforts years before the enactment of the FSA, signaling a legitimate devotion to self-improvement rather than an attempt to curry favor with the court. *See id*. at 34. Similarly, Mr. Harrison has regularly engaged in inmate education courses since 1996. Based upon these findings, the *Marks* court granted the defendant's motion for compassionate release, reducing his sentence to 20 years' imprisonment, followed by an eight-year term of supervised release. *See id*. at 37.

46.     In addition to the length of his § 924(c) sentence, Mr. Harrison also asks this Court to examine the sentence disparity between himself and his codefendants. Each of the co-defendants convicted in Mr. Harrison's indictment have finished serving their sentences and have been released from prison, despite the fact that several of them engaged in conduct far more egregious than Mr. Harrison. Absent the § 924(c) provisions, Mr. Harrison would have been in a similar position to his co-defendants.

47. Plainly, compassionate release may be based upon a combination of factors, including unjust sentencing imposed under § 924(c). *See United States v. Defendant(s)*, 2020 WL 1864906 at *5 (C.D. Cal. Apr. 13, 2020) (finding that a combination of factors including rehabilitation and sentence stacking under § 924(c) established extraordinary and compelling reasons); *United States v. Urkevich*, 2019 WL 6037391 at *4 (D. Neb. Nov. 14, 2019) (finding that a reduction in sentence was warrant based upon the injustice of facing a term of incarceration forty years longer than Congress now deems warranted under § 924(c)).

48. Indeed, had Mr. Harrison been sentenced under the modified provisions of the FSA, he would be subject to only a ten-year mandatory consecutive sentence based upon two simultaneous § 924(c) convictions, placing his maximum expiration date in approximately 2021 rather than 2036.

49. In light of the changes imposed by the FSA, this unjust and grossly disproportionate sentence constitutes an extraordinary and compelling reason warranting sentence reduction, particularly when viewed alongside Mr. Harrison's age, excellent prison record, and rehabilitation.

**b.     Rehabilitation**

50. While incarcerated, Mr. Harrison has consistently and regularly engaged in education programs. Indeed, between 1996 and 2020, Mr. Harrison has completed approximately sixty-five education courses offered by the BOP. *See* Aug. 20, 2020 Inmate Education Data Transcript, attached hereto as **Exhibit G**. Additionally, Mr. Harrison completed his GED in 1998 while incarcerated. *See id*.

51. Upon information and belief, a PATTERN Risk Assessment conducted by the BOP in 2020 confirmed Mr. Harrison's risk as "minimum."

52. Upon information and belief, Mr. Harrison's has no disciplinary record during his period of incarceration, and has, by all accounts, been a model inmate.

### III. The relevant § 3553(a) sentencing factors warrant reduction or modification of Mr. Harrison's sentence.

53. When a defendant establishes the existence of extraordinary and compelling circumstances justifying relief under 18 U.S.C. § 3582(c)(1)(A), a court must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. *See* 18 U.S.C. § 3582(c)(1)(A).

54. Mr. Harrison is sixty-nine years old. He was sentenced to a term of 562 months imprisonment. Mr. Harrison's current release date is October 12, 2036. He has been incarcerated for more than twenty-six years, since his arraignment on September 28, 1994.

55. Had Mr. Harrison been sentenced after passage of the FSA, he would have faced a mandatory minimum term of just ten years under § 924(c), rather than the thirty years this Court was required to impose.

56. During sentencing, this Court stated that "[t]here's no doubt that that's a harsh penalty. What it says it the Court shall impose a consecutive sentence, five years for the first carrying of a firearm, and 20 years for the second. But that's what the statute says, and I don't think I have any alternative but to do that." (*See* Sentencing Tr., Dkt. No. 1549 at 39.)

57. The FSA has now provided this Court with an alternative to the mandatory minimum through compassionate release.

58. We certainly make no attempt to minimize Mr. Harrison's crime of conviction, however, it is clear that his lengthy sentence was due in large part to the "stacking" provisions under § 924(c). Indeed, was it not for those provisions, Mr. Harrison would be nearing the end of his maximum term of imprisonment.

59. It's important to note that Mr. Harrison did not use or brandish a firearm during these staged off-loads, he simply had his lawfully-possessed firearm on his person.

60. Twenty-five years later, and due in large part to his medical conditions and dedication to self-education and improvement, Mr. Harrison is no longer the same man he was at the time of his arrest. He no longer holds any position of power within the Outlaws Motorcycle Club, and is simply incapable of re-offending in a manner similar to his crimes of conviction.

61. These studies have found that first-time offenders are least likely to re-offend:

> The relationship between prior criminal record and recidivism has been recognized by the Commission since its inception in the mid-1980s, as discussed in Chapter Four of the Guidelines Manual. Empirical research assessing correlates of recidivism and criminal career behavior was consulted in formulating the criminal history scoring system and recent research confirms this relationship.

*Recidivism Among Federal Offenders: A Comprehensive Overview*, attached hereto as **Exhibit H** at 18. With respect to Mr. Harrison's position within the OMC:

> Offenders who were organizers, leaders, managers, or supervisors of an offense received an aggravating role adjustment of 2, 3, or 4 levels under the guidelines, increasing their total offense level. Those with such an aggravating role adjustment were less likely to recidivate than other offenders.

*Id*. at 21. Finally, older offenders, like Mr. Harrison, are at a lower risk for re-offending:

> Studies have repeatedly shown that older offenders at sentencing are at lower risk for reoffending, and the Commission's research confirms these findings. Offenders sentenced when younger than twenty-one had a 71.1 percent rearrest rate, compared to 14.0 percent of offenders who are sentenced after age sixty.
>
> Age at release also is associated with different rates of recidivism. Those released into the community who were below age twenty-one had the highest rearrest rate, 67.6 percent. Conversely, those oldest at age of release, *over sixty years old*, had the lowest recidivism rate, 16.0 percent. For each age grouping shown below, the older the age group, the lower the rearrest rate. The same pattern holds for reconviction and reincarceration.

*Id*. at 23.

62. Critically, although Mr. Harrison's sentence may, at the time, have been imposed in accordance with the § 3553(a) factors, the court had no discretion regarding the consecutive 25-year sentence.

63. Some courts have recognized that although releasing a defendant may appear to contradict the need for general deterrence, "Congress also granted courts the authority to act in unusual and extraordinary circumstances," and noted that "it is highly doubtful" that would-be criminals consider the circumstances of their particular case and how 18 U.S.C. § 3582(c)(1)(A) might apply in that situation when deciding whether to break the law. *United States v. Turner*, 2020 WL 5717096 at *5 (E.D. Wis. Sep. 24, 2020) (granting compassionate release despite defendant having served a term less than statutory mandatory minimum sentence).

64. Here, Mr. Harrison's co-defendants have already served their respective sentences and have been released. Absent § 924(c)'s stacking provisions, Mr. Harrison's release date would fall in 2021, rather than 2036.

65. Furthermore, Mr. Harrison would remain under the close supervision of U.S. Probation and Pretrial Services if released or allowed to finish his sentence under home incarceration.

66. If released, Mr. Harrison would reside at with a life-long friend, Vinnie Ambrosino, at 6340 Grove Rd., Brooksville, Fl, 34609.

67. Based upon Mr. Harrison's age, his minimal risk level as reflected by his incarceration in a minimum-security facility, and the FSA's modified sentencing provisions, we respectfully submit that the § 3553(a) factors weigh heavily in favor of release.

## CONCLUSION

In light of the foregoing, we ask the Court to grant Mr. Harrison's request for Compassionate Release. Twenty-six years is an astonishing amount of time to spend in prison and it is difficult to see what would be accomplished by continuing Mr. Harrison's incarceration, particularly in light of the FSA's changes to § 924(c).

We respectfully request that this Court order Mr. Harrison's immediate release, or, in the alternative, allow Mr. Harrison to serve the remainder of his sentence on home incarceration.

DATED:	Buffalo, New York
	February 1, 2021

Respectfully submitted,

LIPSITZ GREEN SCIME CAMBRIA LLP

BY: /s/Alexander E. Basinski
Alexander E. Basinski, Esq.
Erin McCampbell Paris, Esq.
Attorneys for Defendant, Bruce Wayne Harrison
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
(716) 849-1333
abasinski@lglaw.com
emccampbell@lglaw.com

BENJAMIN, AARONSON, EDINGER & PATANZO, P.A.

BY: /s/James Benjamin
James Benjamin, Esq.
1700 E. Las Olas Boulevard, Suite 202
Fort Lauderdale, Florida 33301
(954) 779-1700
sexlaw@bellsouth.net

TO:	JOSEPH K. RUDDY, ESQ.
	ASSISTANT UNITED STATES ATTORNEY
	400 N. Tampa St., Suite 3200
	Tampa, FL 33602

CERTIFICATE OF SERVICE

I hereby certify that on **February 1st, 2021**, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which then sent notification of such filing (NEF) to the following:

Joseph K. Ruddy, Esquire
United States Attorney's Office
Middle District of Florida
400 N. Tampa St., Suite 3200
Tampa, FL 33602
Joseph.ruddy@usdoj.gov

/s/Alexander E. Basinski