UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 8:94-cr-220-KKM-AEP

BRUCE WAYNE HARRISON

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT
HARRISON'S THIRD MOTION FOR COMPASSIONATE RELEASE**

The United States opposes defendant Bruce Wayne Harrison's third motion for
compassionate release. Doc. 3099. Harrison has no medical conditions or other
circumstances that are extraordinary and compelling, and, in any event, the 18
U.S.C. § 3553(a) factors do not support his early release from incarceration.

I.    **Background**

In 1995, this Court sentenced defendant Harrison to serve 592 months'
imprisonment after a jury found him guilty of conspiracy to possess with intent to
distribute cocaine, methamphetamine and marijuana, five counts of possession with
intent to distribute cocaine, three counts of possession with intent to distribute
marijuana, and two counts of use of a firearm in relation to a drug trafficking crime.
Docs. 1296, 1307.

Harrison was the president of the Tampa chapter of the Outlaws Motorcycle
Club gang (the "Outlaws") and was charged, along with 20 other Outlaws co-
defendants, in a 49 count RICO, firearms, and narcotics indictment. *See* Docs. 463,
1277; Presentence Investigation Report ("PSR"). Defendant Harrison (and 15 other

1

defendants) proceeded to trial. Doc. 565. After nearly four and one-half months, Harrison was convicted on August 29, 1995, on 11 counts, as set forth above -- conspiracy to possess with intent to distribute cocaine, methamphetamine, and marijuana; five counts of possession with intent to distribute cocaine; three counts of possession with intent to distribute marijuana; and two counts of using a firearm in furtherance of a drug trafficking crime. *See* Docs. 463, 1277, 1296, 1307; PSR. Defendant was acquitted of some charges, and the judge dismissed some charges. *See* Docs. 1296, 1307; PSR. Two defendants were acquitted and the others convicted. *See* PSR. Defendant Harrison was held accountable for 1,476 kilograms of cocaine and 3,200 pounds of marijuana. Docs. 1296, 1307; PSR. He was found to be an organizer and/or leader in criminal activity that involved five or more participants. *Id.* Defendant Harrison's guideline imprisonment range was life plus a consecutive term of 25 years imprisonment for his firearms offenses. *Id.* The court departed downward four levels, or the defendant's term of imprisonment would have been life imprisonment plus a consecutive term of imprisonment for his firearms offense then and now. *Id.*

Testimony and evidence at trial showed numerous acts committed by members of the Outlaws involving robbery, arson, and extortion. *See* Doc. 1277; PSR. Evidence at trial, including several undercover operations involving narcotics buys by confidential informants and undercover agents posing as drug dealers, showed dealing in large quantities of marijuana, cocaine, methamphetamine, and Xanax. *Id.* Evidence also showed that the Outlaws used threats, intimidation and

physical force against various other individuals. *Id.* Trial evidence also showed the
possession, transport, and use of firearms, explosives, and other deadly weapons to
promote and conduct the affairs of the Outlaws. *Id.* Finally, the evidence at trial
demonstrated a territorial assertion by the Outlaws and the commission of acts of
violence, intimidation, and threats against other motorcycle club members. *Id.*

In one of the videotapes presented at trial, defendant Harrison was shown to
have a gun in his waistband. *Id.* Also, among many other acts committed by
Harrison, there was evidence presented at trial of the violent beating by Harrison of a
woman who managed a bar that Harrison claimed as Outlaws territory, because she
protested that it was neutral territory. *Id.* This beating involved knocking the woman
off a barstool, then grabbing her by the back of her neck and hitting her across the
bridge of her nose with his fist. As she managed to get outside, Harrison knocked her
to the ground and kicked her with his boots. *Id.* She escaped the beating by crawling
beneath a vehicle in the parking lot. *Id.*

The evidence at trial showed the Outlaws committed acts of violence against
individuals due to their race, including racial epithets and threats to kill made to an
interracial couple. Doc. 1277 at 7; PSR.

Defendant Harrison is incarcerated at Coleman Low FCI in Coleman,
Florida, is 73 years old, and is projected to be released on October 12, 2036. *See* BOP
Inmate Locator at https://www.bop.gov/inmateloc/ (last accessed on June 25,
2025). Defendant has served approximately 75% of his sentence.

II.    **Memorandum of law**

A district court has no inherent authority to modify a sentence; it may do so "only when authorized by a statute or rule." *United States v. Puentes*, 803 F.3d 597, 606 (11th Cir. 2015). One of those statutes is 18 U.S.C. § 3582(c)(1)(A), which permits a court to reduce a term of imprisonment if the court determines that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the § 3553(a) sentencing factors weigh in favor of a reduction. *Id.*; *see also United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021).

The Sentencing Commission's applicable policy statement, set forth in USSG §1B1.13, defines "extraordinary and compelling reasons" for purposes of section 3582(c)(1)(A), and it is binding on the courts. *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). Under section 1B1.13, "extraordinary and compelling reasons" that may render a defendant eligible for a sentence reduction fit in the following categories: (1) medical circumstances of the defendant; (2) advanced age plus length of term already served; (3) family circumstances that result in the defendant being the only available caregiver for a minor or incapacitated immediate family member; (4) sexual or physical abuse of the defendant by an individual with custody or control of the defendant during the term of imprisonment sought to be reduced; (5) other circumstances similar in gravity to those in (1) through (4); and (6) an "unusually long sentence," if the defendant has served at least 10 years imprisonment and a change in the law would produce a gross disparity between the

defendant's sentence and the sentence likely to be imposed at the time the motion is filed. USSG §1B1.13(b)(1)–(6).

If the court finds that an extraordinary and compelling reason exists, it still may not reduce the defendant's term of imprisonment under section 3582(c)(1)(A) unless it also finds that the defendant's release would not endanger the community and that the factors listed in 18 U.S.C. § 3553(a) favor compassionate release. *Tinker*, 14 F.4th at 1237. If the defendant fails to establish any of the three requirements, the court need not analyze the other requirements and cannot grant relief. *See United States v. Giron*, 15 F.4th 1343, 1348 (11th Cir. 2021).

The defendant, as movant, bears the burden of establishing entitlement to relief under section 3582. *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014) (addressing a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2)). And the defendant must first "fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See United States v. Harris*, 989 F.3d 908, 909–10 (11th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). The exhaustion requirement is "mandatory, in the sense that a court must enforce the rule if a party properly raises it." *Harris*, 989 F.3d at 911 (internal quotation marks omitted).

### III. Defendant Harrison's compassionate release motion

#### A. Exhaustion

Defendant Harrison sought a sentence reduction on January 27, 2025, and the Warden denied the application. *See* Doc. 3099 at 6-7, 3099-3. More than 30 days passed from the BOP's receipt of defendant's original application before he filed his motion in this Court, so this Court may consider the merits of defendant's motion.

#### B. Extraordinary and compelling circumstances

Here, defendant requests a reduction of his sentence based on his age, serving an "unusually long sentence," and other reasons. Doc. 3099 at 9-14. Section 1B1.13(b) permits a reduction of a defendant's sentence based on the age of the defendant, other grave circumstances, and an unusually long sentence when:

> (2) Age of the Defendant.—The defendant
>
>> (A) is at least 65 years old;
>>
>> (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and
>>
>> (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).
>
> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the

defendant presents an extraordinary and compelling reason, but only where
such change would produce a gross disparity between the sentence being
served and the sentence likely to be imposed at the time the motion is filed,
and after full consideration of the defendant's individualized circumstances.

USSG §1B1.13(b)(2), (5)--(6).

Section 1B1.13(c) further provides that, except as provided in subsection
(b)(6), a court cannot consider a change in the law (including a non-retroactive
guidelines amendment) for purposes of determining whether an extraordinary and
compelling reason exists. USSG §1B1.13(c). But, if a defendant otherwise establishes
that extraordinary and compelling reasons warrant a sentence reduction, a court may
consider a change in the law (including a non-retroactive guidelines amendment) in
determining the extent of any reduction. *Id.*

A defendant's rehabilitation is not, by itself, an extraordinary and compelling
reason that may justify a sentence reduction. 28 U.S.C. § 994(t); USSG §1B1.13(d).
A court may, however, consider a defendant's rehabilitation while serving his
sentence in combination with other circumstances in determining whether and to
what extent a reduction is warranted. USSG §1B1.13(d).

The defendant has not established "extraordinary and compelling reasons" for
a reduction in sentence, because, among other reasons, he has not established that he
is experiencing a serious deterioration in physical or mental health because of the
aging process, and no other circumstances alone or in combination establish
"extraordinary and compelling reasons" for a reduction in sentence. Furthermore,
the changes to the Sentencing Guidelines regarding his 18 U.S.C. § 924(c) (firearms)

convictions that defendant asserts would result in a lower sentence *if he were sentenced today*, were **not** made retroactive.

> **C.    An unusually long sentence is not a valid basis for compassionate release, because the Sentencing Commission exceeded its congressionally delegated authority in promulgating subsection (b)(6).**

Here, defendant argues that he has established extraordinary and compelling reasons for release based in part on a change in the law that, according to defendant has produced a gross disparity between his sentence and the sentence he would receive if he were sentenced for the same offenses today. Although Congress has delegated broad authority to the Sentencing Commission, subsection (b)(6) is contrary to the text, structure, and purpose of 18 U.S.C. § 3582(c)(1)(A) and 28 U.S.C. § 994(a), and is therefore invalid.

> **i.    In exercising its authority, the Commission cannot act contrary to statutory authority.**

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). This delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not reasonable. *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011); *see Batterton*, 432 U.S. at 428. An agency cannot

adopt an impermissible reading of the statute—*i.e.*, a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53–58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and, as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997). In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make *recommendations to Congress* concerning modification or enactment of statutes relating to sentencing." *Id.* § 995(a)(20) (emphasis added).

### ii. Subsection (b)(6) conflicts with section 3582(c)(1)(A)'s plain text, context, and purpose.

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The Commission's interpretation of the

9

statute as set forth in subsection (b)(6) is unreasonable and therefore invalid.[1] *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

### a.    To justify a sentence reduction under Section 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling."

The majority of the circuits to have considered the issue have concluded that, as a matter of plain language, an intervening change in the law is neither extraordinary nor compelling. *See United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198–1200 (D.C. Cir. 2022); *see also United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (unpublished).[2]  This Court should conclude the same.

---

[1]  The Supreme Court has not addressed what deference is owed to the Commission's interpretations of a statute. *DePierre v. United States*, 564 U.S. 70, 87 (2011). This court need not resolve the question because the statute unambiguously excludes the Commission's chosen interpretation. *See, e.g.*, *LaBonte*, 520 U.S. at 762 n.6 ("Inasmuch as we find the statute at issue here unambiguous, we need not decide whether the [Sentencing] Commission is owed deference under [*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)].").

[2]  Four circuits have held that a change in law can form part of an individualized assessment of whether to grant a sentence reduction, but only in combination with other case-specific factors. *Ruvalcaba*, 26 F.4th at 28 (1st Cir.); *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1097-1098 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-1048 (10th Cir. 2021). The Eleventh Circuit has not yet decided the issue.

Congress's decision not to apply a statutory change in sentencing law retroactively, in particular, is neither extraordinary nor compelling. Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning … at the time Congress enacted the statute,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent,'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (quoting *Webster's Third New International Dictionary of the English Language* 807 (1971) (*Webster's*)). Far from being unusual, uncommon, or unprecedented, a defendant's lawfully imposed sentence simply reflects the law at the time he was sentenced.

Here, defendant invokes Congress's decision not to extend the First Step Act's amendment to section 924(c) to defendants like him as a change in law warranting a sentence reduction. In the First Step Act, Congress amended section 924(c)(1)(C) so that the increased penalties for a second section 924(c) conviction do not apply unless the defendant has a prior section 924(c) conviction that became final before the defendant's current section 924(c) violation. Congress, however, made the deliberate choice not to apply that amendment to defendants who were sentenced before the Act's enactment, specifying that the change applies only "if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. 5222. In so doing, Congress adhered to "the ordinary practice" in "federal sentencing" of "apply[ing] new penalties to defendants not yet sentenced, while

withholding that change from defendants already sentenced." *Dorsey v. United States*,
567 U.S. 260, 280 (2012); *cf.* 1 U.S.C. § 109 (general nonretroactivity provision).

Given Congress's deliberate choice not to apply the First Step Act's change to
section 924(c) to defendants who had already been sentenced, "there is nothing
'extraordinary' about" the fact that defendant's sentence reflects the statutory penalty
that existed at the time he was sentenced. *Thacker*, 4 F.4th at 574. That sentence
"was not only permissible but statutorily required at the time." *United States v.
Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring). And
when Congress enacted the First Step Act, it specifically declined to disturb
defendant's sentence for his second Section 924(c) conviction, even as it made other
(previous) statutory changes applicable to defendants previously sentenced. In
section 404 of the same Act, for example, Congress expressly enacted a mechanism
allowing defendants convicted under certain drug statutes to seek retroactive
application of those statutory changes in their cases. Section 404 authorizes a
sentencing court to "impose a reduced sentence as if [those provisions] of the Fair
Sentencing Act" had been in effect at the time of the defendant's offense. § 404(b),
132 Stat. 5222. But Congress simultaneously declined to disturb section 924(c)
sentences that had already been imposed notwithstanding the different penalties that
section 924(c) would apply at future sentencings.

A nonretroactive change to a statutory provision likewise cannot constitute a
"compelling" reason for a sentence reduction. When Congress enacted the
Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing,

impelling, driving." *McCall*, 56 F.4th at 1055 (quoting *Webster's* 463). Thus, for a

reason to be "compelling" under section 3582(c)(1)(A)(i), it must provide a "forcing,

impelling, [or] driving" reason to disturb the finality of a federal sentence. *Id.*

(internal quotation marks omitted). Even beyond the First Step Act's explicit

determination not to apply the amendment to section 924(c) retroactively, ordinary

principles of nonretroactivity already consider, and reject, the notion that changes in

statutory law generally should be applied retrospectively. Congress enacts new

sentencing statutes against a background principle, codified in 1 U.S.C. § 109, that a

criminal statute does not change the penalties "incurred" under an older criminal

statute "unless the repealing Act … so expressly provide[s]." The "strong

presumption against statutory retroactivity" "is 'deeply rooted in our jurisprudence'

and 'embodies a legal doctrine older than our Republic.'" *Jenkins*, 50 F.4th at 1198

(quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). To treat a

nonretroactive change in the law as a "compelling" reason to disturb a final sentence

would thus undo the balance already struck by ordinary nonretroactivity principles.

Nothing about a nonretroactive change in the law compels such a nonsensical

outcome.

 Any disparity between defendant Harrison's sentence and the sentence he

would receive today is the product of deliberate congressional design—namely,

Congress's decision not to apply the First Step Act's change to section 924(c) to

defendants who had already been sentenced. As the Supreme Court has recognized,

such "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts

a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Dorsey*, 567 U.S. at 280. And treating Congress's express adherence to "ordinary practice" in federal sentencing, *id.*, "as simultaneously creating an extraordinary and compelling reason for early release" would contravene several canons of construction, *Andrews*, 12 F.4th at 261.

Accordingly, a nonretroactive change in the law cannot serve as either an "extraordinary" or a "compelling" reason for a sentence reduction, whether in isolation or as part of a package of such "reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Whether considered alone or in combination with other asserted factors, the possibility that a previously sentenced defendant might receive a lower sentence if he were sentenced today is a "legally impermissible" consideration in determining whether an extraordinary and compelling reason exists. *Jenkins*, 50 F.4th at 1202; *see United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

> **b.    Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law.**

Congress expressly required that any reason for a sentence reduction be both "extraordinary and compelling," 18 U.S.C. § 3582(c)(1)(A)(i). As explained above, an intervening change is neither, under those terms' ordinary meaning, and by using

that phrase Congress placed clear textual limits on the reasons the Commission may use to warrant a sentence reduction.

"Statutory construction," moreover, "is a holistic endeavor" and a provision "is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). Other features of the scheme confirm that the phrase "extraordinary and compelling reasons" does not encompass changes in law.

Most notably, in the very next paragraph—section 3582(c)(2)—Congress expressly addressed the retroactive application of some changes in law, authorizing courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see* 28 U.S.C. § 994(u) (directing the Commission to determine when such modifications are appropriate). There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had section 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056. That Congress did not similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law shows that Congress did not intend for section 3582(c)(1)(A) to reach such changes.

Reducing sentences based on intervening changes in the law also would undermine congressional design more generally because a 28 U.S.C. § 2255 motion

is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023). Treating a nonretroactive change in the law as an "extraordinary and compelling" reason for a sentence reduction would allow defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." *Crandall*, 25 F.4th at 586. It "would wholly frustrate explicit congressional intent to hold that [defendants] could evade" those restrictions "by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973). Congress surely "knew of its specific statutory scheme authorizing post-conviction relief" both "when it [enacted section 3582(c)(1)(A)] in 1984 and amended it in 2018," and had "Congress intended the compassionate-release statute to act as an exception to this post-conviction framework, it would have made that intent specific." *McCall*, 56 F.4th at 1057–58 (internal quotation marks omitted).

      c.    **Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction under section 3582(c)(1)(A)(i) also would undermine a primary purpose of the Sentencing Reform Act, in which that provision was enacted**.

Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta v. United States*, 488 U.S. 361, 366 (1989) (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate

Report)); *see also Neal v. United States*, 516 U.S. 284, 290–91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system."). In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." *Tapia v. United States*, 564 U.S. 319, 325 (2011).

Consistent with Congress's goal of determinate sentencing, section 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. *Id.* at 55-56, 121.

Subsection (b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. USSG §1B1.13(b)(6). That authority is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to section 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of

sentencing." Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity" (and what a "gross disparity" looks like). It is doubtful the Sentencing Reform Act "contained the[] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, so there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," *Crandall*, 25 F.4th at 586.

The Sentencing Commission's explanation for the amendment cites a single sentence from the Senate Report to support its conclusion that section 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences." *See* 88 Fed. Reg. at 28,258. In the relevant passage, the Senate Judiciary Committee expressed its belief that the "unusual cases in which an eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence." Senate Report at 55. The Commission took that line—which is ambiguous at best—out of context and elevated that single sentence above the Act's plain text and overarching purpose. In context, the passage suggests only that Congress anticipated that the sort of "changed

circumstances" that might warrant a sentence reduction would most often emerge
during the duration of an "unusually long" period of incarceration—during which a
prisoner might become elderly or infirm, for example. *Id.* Indeed, the passage makes
clear that to justify even the reduction of an unusually long sentence Congress
understood section 3582(c)(1)(A) to require the identification of particular
"extraordinary and compelling circumstances." *Id.* The passage does not suggest that
section 3582(c)(1)(A) provides authority to reduce any sentence a court subsequently
comes to view, in hindsight, as "unusually long."

The Commission also invoked the First Step Act of 2018's stated intent to
increase the use of sentence-reduction motions. *See* 88 Fed. Reg. at 28,256; § 603(b),
132 Stat. 5239. But nothing about the First Step Act's procedural amendment to
section 3582(c)(1)(A) or Congress's expectation that the amendment would lead to
greater use of the provision "suggests Congress intended to change th[e] *substantive*
status quo with a process-oriented amendment." *McCall*, 56 F.4th at 1060 (emphasis
added). Congress's effort to allow defendants to file sentence-reduction motions
directly sought to remedy perceived deficiencies in the BOP's preexisting procedures,
which prevented the BOP from filing section 3582(c)(1)(A) motions on behalf of
some defendants who satisfied longstanding criteria for relief. Congress, however,
did not amend the statutory requirement that the reason for a sentence reduction be
extraordinary and compelling. Tellingly, the amendment explicitly conditioned a
defendant's filing on a requirement that he first "exhaust[]" with BOP a request that
BOP "bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A).

Congress could not have expected BOP to evaluate whether an intervening change in
law warranted a defendant's early release from custody; indeed, BOP typically plays
no role in "determining the lawfulness of individual sentences," "calculating
guideline ranges," or assessing the possible disparity produced by a defendant's
sentence. *See Jenkins*, 50 F.4th at 1205–06. In short, nothing about the First Step
Act's procedural amendment "indicates any intention on Congress's part" to
"fundamentally change the nature of compassionate release." 4/5/23 Tr. 64-66 (Vice
Chair Murray, delivering joint statement); *cf. Whitman v. Am. Trucking Ass'ns*, 531
U.S. 457, 468 (2001) ("Congress … does not, one might say, hide elephants in
mouseholes.").

> **d.** **Finally, the Commission's interpretation of section
> 3582(c)(1)(A) to allow district courts to apply nonretroactive
> changes in law to particular defendants is in serious tension
> with basic separation-of-powers principles.**

In upholding the Sentencing Commission's constitutionality, the Supreme
Court observed that the Commission is not vested with "the legislative responsibility
for establishing minimum and maximum penalties for every crime." *Mistretta*, 488
U.S. at 396. "Congress generally cannot delegate its legislative power to another
Branch," *id.* at 372, and "[w]hatever views may be entertained regarding severity of
punishment, … these are peculiarly questions of legislative policy," *Gore v. United
States*, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or
separation-of-powers concern, the Court held, precisely because Congress delegated
to the Commission "nonadjudicatory functions that do not trench upon the

prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6)
contravenes those limits by purporting to empower courts to ignore Congress's
retroactivity determinations on a case-by-case basis.

      The separation-of-powers concern is particularly apparent when one considers
the Commission's directive regarding *its own* retroactivity determinations. Section
3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a
sentencing range that has subsequently been lowered by the Sentencing
Commission" to move for a sentence reduction "consistent with applicable policy
statements issued by the Sentencing Commission," and USSG §1B1.10 identifies
particular Guidelines amendments that the Commission has elected to make
retroactive. *See* USSG §1B1.10(a), (d). In subsection (b)(6), the Commission
expressly excluded "an amendment to the Guidelines Manual that has not been
made retroactive" from qualifying as an extraordinary and compelling reason for a
sentence reduction. USSG §1B1.13(b)(6); *see* 88 Fed. Reg. at 28,259. The
Commission accordingly precluded courts from using compassionate release as an
end-run around the Commission's own determinations concerning the retroactive
application of its Guidelines amendments. But by permitting other changes in law,
including a statutory change that *Congress* explicitly declined to make retroactive, to
qualify, the Commission declined to afford the same respect to Congress's
retroactivity determinations. That counterintuitive result cannot be squared with the
Commission's statutory authority. *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the
Commission "must bow to the specific directives of Congress").

Indeed, the separation-of-powers concerns are particularly apparent with respect to defendant's invocation of section 403 of the First Step Act as grounds for a reduction. In the same statute in which Congress amended section 3582(c)(1)(A) to permit defendants to file sentence-reduction motions, Congress made the deliberate choice *not* to make section 403 applicable to a defendant who was sentenced before the First Step Act's enactment. Congress specified that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. 5222. So any disparity between defendant's sentence and the sentence he would receive today is the product of deliberate congressional design, and there's no reason to think that "the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean[t] to use a general sentencing statute from 1984 to unscramble that approach." *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021); *see Andrews*, 12 F.4th at 261 ("[W]e will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release. Such an interpretation would sow conflict within the statute.").

### e. Congress's failure to reject the Commission's amendment does not demonstrate congressional acquiescence to the Sentencing Commission's interpretation.

The Supreme Court has categorically rejected the claim that Congress's failure to reject a Guidelines amendment "means that it has effectively adopted [the Commission's] interpretation with respect to the statute." *DePierre*, 564 U.S. at 87. A court "[o]rdinarily" should resist reading congressional intent into congressional

inaction," *Kimbrough v. United States*, 552 U.S. 85, 106 (2007), and Congress's failure
to expressly disapprove of the amendment does not mean that the Commission acted
consistent with the statute. Indeed, policy statements like the one at issue here need
not be submitted to Congress at all. *See* 28 U.S.C. § 994(p) (requiring only that
changes to "guidelines" be submitted for congressional review); *id.* § 994(a)(1)–(2)
(distinguishing between guidelines and policy statements). If Congress's failure to
disapprove a guideline is entitled to no weight in assessing the lawfulness of the
Commission's action, the same is certainly true of a policy statement, which
Congress might well conclude need not have been submitted in the first place.

     **f.**    ***Concepcion* also does not authorize reductions under subsection (b)(6).**

     In *Concepcion*, the Supreme Court considered the scope of a district court's
discretion under section 404 of the First Step Act, which provides an explicit
statutory mechanism for a court to revisit the sentence of a defendant convicted of a
crack-cocaine offense "the statutory penalties for which were modified by section 2
or 3 of the Fair Sentencing Act of 2010." § 404(a), 132 Stat. 5222; *see id.* § 404(b), 132
Stat. 5222; *Concepcion v. United States*, 142 S. Ct. 2389, 2397 (2022). The Court
explained that, in adjudicating a motion under section 404, a district court "may
consider other intervening changes" of law or fact, beyond the changes made by
those sections of the Fair Sentencing Act. *Concepcion*, 142 S. Ct. at 2396.

     Unlike section 404, which directly authorizes sentence reductions for a
specifically defined subset of previously sentenced drug offenders, section

3582(c)(1)(A)(i) contains a threshold requirement that a district court identify

"extraordinary and compelling reasons" warranting a sentence reduction. 18 U.S.C.

§ 3582(c)(1)(A)(i). Indeed, the Court in *Concepcion* identified section 3582(c)(1)(A) as

a statute in which "Congress expressly cabined district courts' discretion" in a way

that section 404 does not. 142 S. Ct. at 2401.

### C.    Factors in 18 U.S.C. § 3553(a)[3]

Finally, this Court should not grant defendant a reduction of his sentence

because the applicable sentencing factors in section 3553(a) weigh against release.

As set forth above in the brief summary of the defendant's crimes, which

focuses mainly on the defendant's specific acts and does not elaborate on other

serious and violent acts committed by the organization of which the defendant was a

part, the defendant's offense in this case was a serious drug-trafficking offense that

involved firearms and acts of violence, and the defendant was a leader of many

others in that offense.

---

[3]These are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The defendant's Guideline sentence of imprisonment (without any discretionary downward departures) would still today be life imprisonment plus a consecutive term of imprisonment for his firearms offenses.

THEREFORE, this Court should deny defendant's motion for compassionate release.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:     /s/ E. Jackson Boggs Jr.
        E. JACKSON BOGGS JR.
        Assistant United States Attorney
        USAO No. 080
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone:   (813) 274-6000
        Facsimile:    (813) 274-6358
        E-mail:   Jackson.Boggs@usdoj.gov

25

**U.S. v. Bruce Wayne Harrison**                    **Case No. 8:94-cr-220-KKM-AEP**

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2025, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

Hector Lora

*/s/ E. Jackson Boggs Jr.*
E. JACKSON BOGGS JR.
Assistant United States Attorney
USA No. 080
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail:     Jackson.Boggs@usdoj.gov