**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

v.                                                          Case No. 8:94-cr-220-KKM-AEP

BRUCE WAYNE HARRISON,

    Defendant.
_____

## ORDER

On December 19, 1995, Bruce Wayne Harrison received a sentence of 592 months' (approximately 49 years') imprisonment and five years of supervised release after a jury convicted him of conspiracy to possess with the intent to distribute cocaine, methamphetamine, and marijuana; five counts of possession with the intent to distribute cocaine; three counts of possession with the intent to distribute marijuana; and two counts of use of a firearm in relation to a drug trafficking crime. 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(c); Verdict (Doc. 1038); Judgment (Doc. 1307). Harrison moved for compassionate release in April 2020, (Doc. 3051), and a colleague denied it, (Doc. 3055). He moved a second time for compassionate release in February 2021, and a colleague denied his motion again, (Doc. 3092). He now renews his motion, 3d Mot. Comp. Rel. (Doc. 3099), and the government opposes, Resp. (Doc. 3114).

1

Subject to ordinary appellate and collateral review, sentences of imprisonment are generally final. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1) sets out one exception, commonly called "compassionate release." *United States v. Handlon*, 97 F.4th 829, 831–32 (11th Cir. 2024) (per curiam). For his compassionate release motion to be considered on the merits, a prisoner must either exhaust his administrative remedies with the Bureau of Prisons, or else the prisoner's warden must fail to act on a request for compassionate release within thirty days of receipt. 18 U.S.C. § 3582(c)(1)(A).

If properly exhausted, a court may then order compassionate release only if (1) "extraordinary and compelling reasons warrant" release, (2) the factors in 18 U.S.C. § 3553(a) support release, and (3) release is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The applicable policy statement is U.S.S.G. § 1B1.13. *See United States v. Bryant*, 996 F.3d 1243, 1252 (11th Cir. 2021). The defendant bears the burden of proving that the sentencing factors, the policy statement, and § 3582 support compassionate release. *See United States v. Kannell*, 834 F. App'x 566, 567 (11th Cir. 2021) (per curiam) (citing *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014)). "Because all three conditions—*i.e.*, support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to § 1B1.13's policy statement—are necessary, the absence of even one would

2

foreclose a sentence reduction." *Handlon*, 97 F.4th at 832 (quoting *United States v. Tinker*, 14 F.4th 1234, 1237–38 (11th Cir. 2021) (per curiam)).

The parties do not dispute that Harrison exhausted his administrative remedies. Resp. at 6 (acknowledging that Harrison properly exhausted and the "Court may consider the merits of [Harrison]'s motion"). I therefore proceed to the merits of his motion.

Harrison's reasons for release qualify as "extraordinary and compelling" under § 1B1.13(b)(2).[1] That subsection requires that "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2); *see* 3d Mot. Comp. Rel. at 13. It is undisputed that Harrison meets the first and third requirements. He is 73 years old, and he has served 31 years of his term of imprisonment, 3d Mot. Comp. Rel. at 2–3.

The real dispute between Harrison and the government concerns whether Harrison is experiencing a serious deterioration in physical health because of the aging process. Harrison, one of the oldest inmates in BOP custody, *see* Federal Bureau of Prisons, *Inmate Age*, https://perma.cc/MZM6-

---

[1] Harrison argues in the alternative that other provisions of § 1B1.13 justify compassionate release, including § 1B1.13(b)(6). I do not address them because one basis is sufficient.

X9ZL (last accessed Sep. 29, 2025) (reflecting that less than 3% of BOP inmates are over 65), submits that he was diagnosed with "acquired clawfoot which is painful and makes walking very difficult," and that the medication to treat that affliction makes him "very dizzy." 3d Mot. Comp. Rel. at 14. Harrison was also diagnosed with "hyperplasia of prostate," which "causes urinary obstruction," and he takes medication for hypertension. *Id*. Erin McCampbell Paris, Harrison's counsel, confirmed the veracity of Harrison's medical claims based on a review of his medical records. Paris Decl. (Doc. 3100) ¶¶ 1–3; *cf. United States v. Palacios-Bonilla*, No. 8:08-CR-402-VMC-SPF, 2023 WL 2527050, at *2 (M.D. Fla. Mar. 15, 2023) (denying compassionate release motion because the defendant "provide[d] no proof" of an age-related decline in health). The government does not rebut Harrison's evidence on this point, contending simply that Harrison has not established "serious deterioration in physical or mental health because of the aging process." Resp. at 7. I disagree and find that Harrison is experiencing a serious deterioration in physical health due to the aging process, in particular the inability to walk. *See United States v. Johnson,* No. 3:20-cr-25-MMH-PDB, 2020 WL 5513380, at *4 (M.D. Fla. Sept. 14, 2020) (finding that 80-year-old defendant's chronic kidney disease, high blood pressure, vision loss, and a heart murmur qualified as serious age related health deterioration); *United States v. Smith*, 482 F. Supp. 3d 1218, 1224 (M.D. Fla. 2020) (concluding that 70-year-old inmate's heath

4

conditions including arthritis, cerebrovascular disease, a stroke, and dizziness constituted serious age-related physical decline).

Harrison has also displayed significant rehabilitation while in prison. While rehabilitation alone cannot warrant release, I may consider it in combination with the other factors. U.S.S.G. § 1B1.13(d). His 30-year record at BOP reflects only two infractions, neither of which involved any type of violence,[2] and the most recent of which occurred near twenty years ago. 3d. Mot. Comp. Rel. at 15–16 (citing Forrest Decl. (Doc. 3099-2) ¶¶ 16, 35). While in prison, Harrison earned a G.E.D. and took "dozens of courses," including counseling courses to help other inmates. *Id.* at 16 (citing Inmate Education Data Transcript (Doc. 3099-6)). BOP assigned him to work "independently in areas where unsecured inmate property is kept," and he has served as referee during recreation, and as such is "entrusted with resolving conflicts between inmates." *Id.* (citing Forrest Decl. ¶¶ 19–20). The government does not rebut or otherwise respond to this evidence. *See generally* Resp.

The factors in 18 U.S.C. § 3553(a) support release too. Those factors include, in relevant part: '(1) the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as '(2) the need for the

---

[2] Harrison received his first infraction in 2001 for refusing a cell assignment, and the second in 2007 for placing his hand on the lap of a visitor during visitation. 3d. Mot. Comp. Rel. at 16 (citing Forrest Decl. (Doc. 3099-2) ¶ 16).

5

sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant.'" 18 U.S.C. § 3553(a).

Harrison's offenses were serious, as the Outlaws Motorcycle Club engaged in violent acts to distribute drugs and maintain order, *see* Resp. at 3, 24, some of which involved firearms. I do not minimize those offenses, but I put them in context of his over 30-year, nearly perfect BOP tenure. Harrison's history and characteristics do not indicate that he is at risk of making the same mistakes after three decades in prison, particularly at his age. *See United States v. Friedlander*, No. 8:08-CR-318-T-27TGW, 2021 WL 2661109, at *3 (M.D. Fla. June 29, 2021) ("'[A]ge is generally a strong factor influencing the likelihood of committing a crime,' with 'older offenders . . . substantially less likely than younger offenders to recidivate following release.'" (quoting UNITED STATES SENTENCING COMMISSION, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS 11, 30 (2017), https://perma.cc/HKY2-73HD)). Harrison's low risk of recidivism is not simply aspirational either, as evidenced by the above discussed responsibilities that he has been given by BOP. *See* Forrest Decl. ¶ 17 (noting that Harrison has been free of incident reports for the last 18 years of his incarceration); *id.* ¶ 19 (observing that Harrison's job as a janitor requires him "to work independently

6

with minimal supervision, within the unit near other inmate's unsecured property," while his position as a prison recreation referee "speaks to his ability to remain calm in stressful situations and be proficient at conflict resolution"); *see also* Inmate History Work Detail (Doc. 3099-7). Before his arrest, Harrison had no criminal record or evidence of drug abuse and received two purple hearts while serving in the Vietnam War. 3d Mot. Comp. Rel. at 16 (citing Forrest Decl.¶ 33). BOP's own risk assessment classifies Harrison as a minimum-risk inmate for recidivism. *Id.*; BOP Risk Assessment (Doc. 3099-5). And Harrison plans on applying for social security and veteran benefits to improve his transition into the community. Forrest Decl. ¶ 33; *see United States v. Daley*, 484 F. Supp. 3d 1171, 1177 (M.D. Fla. 2020) (finding that the defendant's supportive release plan weighed in favor of his release).

For similar reasons, Harrison does not present a danger to the public under § 3142(g). Although Harrison's offenses involved a firearm and controlled substances, he did not "brandish or otherwise use the firearms that he carried." 3d Mot. Comp. Rel. at 15; *see United States v. Rahim*, 535 F. Supp. 3d 1309, 1311, 1320–21 (N.D. Ga. 2021) (granting motion for compassionate release for defendant who used firearms in the commission of a robbery because other factors outweighed the nature of the offense). As explained above, Harrison's record in prison is free from any drug-related or violent infractions, and he has engaged in rehabilitative activities. *See United States*

7

*v. Jones*, No. 3:05-CR-001-HES-MCR, 2022 WL 62089, at *4 (M.D. Fla. Jan. 6, 2022) (defendant's good behavior and lack of infractions during his 12 years in prison showed that he would not be a danger to the public under § 3142(g)). Although I did not sentence Harrison, my colleague who did concurs that compassionate release is appropriate at this time.

In sum, considering Harrison's "age, health, length of time in prison, and good behavior," "compassionate release is warranted." *Id.* at *1. Accordingly, Harrison's third Motion for Compassionate Release (Doc. 3099) is **GRANTED**. Harrison's term of imprisonment is reduced to **TIME SERVED,** and he must therefore be released **within fourteen days from today's date**. Upon his release from prison, Harrison will begin serving a term of supervised release of **five years**, *see* Judgment. Harrison will be subject to the same terms and conditions of supervised release previously imposed.

**ORDERED** in Tampa, Florida, on October 6, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge